IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MATTHEW OAKDEN, | ) | No. C 05-2887 MMC (PR) |
| Plaintiff, | ) ) | **ORDER OF SERVICE; DENYING PRELIMINARY INJUNCTION** |
| v. | ) ) | |
| BLIESNER, et al., | ) ) | (Docket No. 9) |
| Defendants | ) ) | |

On July 15, 2005, plaintiff, proceeding pro se and currently incarcerated at Pelican Bay State Prison ("PBSP"), filed the above-titled civil rights action under 42 U.S.C. § 1983. By order filed October 19, 2005, the Court dismissed the complaint with leave to amend. Plaintiff filed a timely amended complaint on November 17, 2005. On November 30, 2005, plaintiff filed a motion for a temporary restraining order ("TRO") and preliminary injunction, seeking to require numerous prison officials to furnish him with special meals in accordance with his religion.

**DISCUSSION**

**A.   Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings, however, must be

liberally construed.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

**B.     Legal Claim**

In his amended complaint, plaintiff alleges that defendants Chaplain Bliesner, Supervising Correctional Cook M. Gomez, Correctional Counselor Somera, and Warden Kirkland, all PBSP officials, have denied his requests for a "religious diet" of only uncooked foods.  Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."  McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987).  Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under § 1983 for denial of the right to exercise religious practices and beliefs.  See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (discussing factors to be considered where Jewish inmate claimed denial of kosher diet).  In order to establish such violation, a prisoner must show the defendant burdened the practice of the prisoner's religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests.  See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997).  To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'"  Id. at 737.  A prisoner may be inconvenienced in the practice of his or her faith, provided the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion."  See id.

Plaintiff's original complaint was dismissed because it did not allege the name or nature of plaintiff's religion, that he has a sincerely held belief in that religion, or that the religion mandates the raw-foods diet he seeks.  See Africa v. Pennsylvania, 662 F.2d 1025 (3d Cir. 1981) (holding no constitutional violation committed where prison denied prisoner's

request for diet of only raw foods; finding prisoner's beliefs, although sincerely held, did not constitute "religion" within First Amendment); see also McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) (finding prison authorities' denial of special religious diet appropriate if inmate not sincere in religious beliefs).  In his amended complaint, plaintiff alleges he is a minister in the "Church of the Creator," whose religion, called "Creativity," mandates that members adhere to a lifestyle known as "Salubrious Living," which includes, inter alia, a raw-foods diet.

These allegations are sufficient to state a cognizable claim for the violation of his right to exercise his religious beliefs, but only provided that the "Church of the Creator" qualifies as a "religion" entitled to First Amendment protection.  The First Amendment protects unfamiliar and idiosyncratic as well as commonly recognized religions.  See Alvarado v. City of San Jose, 94 F.3d 1223, 1230 (9th Cir. 1996).  Defining "religion" for First Amendment purposes is notoriously difficult, if not impossible.  See id. at 1227.  It is clear, however, that a definition of religion that encompasses any symbol or belief to which an individual ascribes serious spiritual significance is unworkably broad.  See id. at 1230.  The Ninth Circuit has applied a three-part test, devised by the Third Circuit, to guide its determination of whether a belief or movement invokes constitutionally cognizable religious interests:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.  Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.  Third, a religion often can be recognized by the presence of certain formal and external signs.

Id. at 1229-30 (quoting Africa v. Pennsylvania, 662 F.2d 1025, 1032 (3d Cir. 1981)) (holding New Age beliefs emphasizing subjectivity and individuality and lacking organization, membership, moral and behavioral obligations, comprehensive creed, specific texts, rituals and guidelines, particular objects of worship and requirement of religious exclusivity do not qualify as religion for purposes of First Amendment).

Here, plaintiff alleges his church is based on published texts, that it received a "charter" from the State of Florida in 1973 and tax exempt status in 1974, and that it certified plaintiff as a minister in 2004.  Plaintiff further alleges Chaplain Bleisner is in charge of

3

certifying inmates for approval for special religious meals, but that the approval plaintiff received from Chaplain Bliesner, specifically, a "Special Religious Diet Chrono," did not conform to plaintiff's belief of eating only uncooked foods.  Plaintiff alleges that Supervising Correctional Cook M. Gomez, after informing plaintiff that plaintiff needed to write Chaplain Bleisner, denied plaintiff's First Formal Level administrative appeal for a raw-foods diet. Plaintiff alleges Correctional Counselor Somera and Warden Kirkland denied his administrative appeal for a raw-foods diet at the Second Formal Level of review.

The foregoing allegations, when liberally construed, are sufficient under 42 U.S.C. § 1915A to state a cognizable § 1983 claim that defendants' denial of plaintiff's request for a raw-foods diet violates his First Amendment rights.

## CONCLUSION

1.  The Clerk of the Court shall issue summons and the United States Marshall shall serve, without prepayment of fees, a copy of the <u>amended complaint</u> in this matter, all attachments thereto, and a copy of this order upon **Chaplain Bliesner**, **Correctional Cook M. Gomez**, **Correctional Counselor Somera**, and **Warden Kirkland** at **Pelican Bay State Prison**.  The Clerk shall also mail a courtesy copy of this order and the amended complaint to the California Attorney General's Office.

2.  In order to expedite the resolution of this case, the Court orders as follows:

    a.  No later than **sixty (60) days** from the date of this order, defendants shall file a motion for summary judgment or other dispositive motion.  Defendants may refile the motion filed in plaintiff's previous case, or they may supplement or augment that motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.

**<u>Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.  If any defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due</u>**.

All papers filed with the Court shall be promptly served on plaintiff.

4

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than **thirty (30) days** from the date defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to defendants' motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir. 1994).

c. Defendants shall file a reply brief no later than **fifteen (15) days** after plaintiff's opposition is filed.

d. The motion shall be deemed submitted as of the date the reply brief is

5

due.  No hearing will be held on the motion unless the Court so orders at a later date.

      3.    All communications by the plaintiff with the Court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

      4.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

      5.    It is plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

      6.    Extensions of time are not favored, though reasonable extensions will be granted.  However, the party making the motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time.  The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is received.  Any motion for an extension of time must be filed no later than the deadline sought to be extended.

      7.    With respect to plaintiff's motion for a TRO and preliminary injunction, plaintiff has neither complied with the notice requirement of Rule 65(a)(1) of the Federal Rules of Civil Procedure, nor certified the reasons for his not having provided such notice, as required by Rule 65(b) of the Federal Rules of Civil Procedure.  Accordingly, plaintiff's request for a TRO and/or a preliminary injunction is DENIED.

This order terminates Docket No. 9

IT IS SO ORDERED.

DATED: May 12, 2006

_____
MAXINE M. CHESNEY
United States District Judge