1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MATTHEW OAKDEN,                              )   No. C 05-2887 MMC (PR)
                                             )
                    Plaintiff,               )
                                             )   **ORDER GRANTING MOTION FOR**
        v.                                   )   **SUMMARY JUDGMENT**
                                             )
                                             )   (Docket No. 23)
BLIESNER, et al.,                            )
                                             )
                    Defendants.              )
_____          )

On July 15, 2005, plaintiff, a California prisoner currently incarcerated at Pelican Bay

State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action under

42 U.S.C. § 1983, alleging PBSP officials were violating his First Amendment rights by

refusing to accommodate his request for a religious diet.  The Court dismissed the complaint

with leave to amend.  On May 12, 2006, after reviewing the amended complaint[1], the Court

found plaintiff had stated cognizable claims against PBSP defendants Chaplain Bliesner

("Bliesner"), Correctional Cook M. Gomez ("Gomez"), Correctional Counselor Somera

("Somera"), and Warden Kirkland ("Kirkland").  In his complaint, plaintiff seeks injunctive

relief and monetary damages.

---

[1]For the sake of simplicity, the amended complaint, filed November 17, 2005, will be
referred to herein as the "complaint," unless otherwise noted.

1    Now before the Court is defendants' joint motion for summary judgment.[2]  Plaintiff

2    has not filed an opposition.[3]

3                              **FACTUAL BACKGROUND**[4]

4    Plaintiff was at all times relevant to the complaint a prisoner housed at PBSP.  (Pl.'s

5    Compl. ¶ 5.)  Plaintiff became a member of the "Church of the Creator" in or around October

6    2003.  (Decl. S. Tama Supp. Defs.' Mot. Summ. J. ("Tama Decl."), Ex. D at 2:3-4.)  The

7    primary objective of the Church of the Creator is the "survival, expansion and advancement

8    of the white race."  (Id. at 3:11-14.)  Three publications by the Church of the Creator

9    constitute the "Creed of Creativity": "Nature's Eternal Religion," "The White Man's Bible,"

10   and "Salubrious Living."  (Pl.'s Compl. ¶ 26.)  "Creativity," the religion of the Church of the

11   Creator, recommends that its members follow a lifestyle known as "salubrious living."  (Id. ¶

12   24.)  Creative Credo No. 5 defines "salubrious living" as "an effective, systematic program

13   for the upgrading of the health and vigor of our precious White Race."  (Tama Decl., Ex. D at

14   2:8-12.)  Creative Credo No. 6 recommends its members eat a "frugitarian" diet.  (Id. at 2:15-

15   18.)  Such a diet, which plaintiff refers to as a "raw-food diet," consists of food that has been

16   organically grown, and is "uncooked, unprocessed, unpreserved and not tampered with in

17   any other way."  (Pl.'s Compl ¶ 25.)  Creativity believes in, but does not require, that its

18   members follow a raw-food diet.  (Tama Decl., Ex. D at 3:28-4:5.)  The "16 Commandments

19   of Creativity" do not discuss "salubrious living" or require that its members follow a raw-

20   _____

21   [2]On December 12, 2006, after the instant motion was filed, the Court dismissed all
     claims against defendant Somera because of plaintiff's failure to serve him, pursuant to Rule

22   4(m) of the Federal Rules of Civil Procedure.

23   [3]In its order of service, the Court explained to plaintiff what he must do to oppose a
     motion for summary judgment filed by defendants.  According to the briefing schedule set

24   forth in that order, plaintiff's opposition to the summary judgment motion would be due
     thirty days after defendants filed their motion.  On December 4, 2006, twenty-one days after

25   defendants filed the instant motion, plaintiff filed a request for an extension of time to file his
     opposition to the motion.  On December 12, 2006, the Court granted plaintiff's request, and

26   ordered him to file his opposition on or by January 12, 2007.  Plaintiff did not file an
     opposition, and has not communicated with the Court since the date it issued its order

27   granting an extension of time.

28   [4]Except where otherwise noted, the facts set forth in the background section are not
     disputed by the parties.

                                        2

**United States District Court**
For the Northern District of California

1   food diet.  (Id. at 4:13-17.)

2          PBSP offers only one Special Religious Diet ("SRD").  The SRD is prepared by the

3   Institution's Food Service, and reviewed and approved by the prison dietitian.  The diet is

4   made up of food items within the normal institutional food supplies, excluding beef, pork,

5   and poultry.  (Decl. R. Bliesner Supp. Defs.' Mot. Summ. J. ("Bliesner Decl.") ¶ 2.)

6          The Protestant Chaplain at PBSP, defendant Bliesner, is the SRD Coordinator.  He

7   does not provide food services; it is his responsibility to establish inmate eligibility for a

8   SRD, and to place inmates on the SRD list provided to the Food Service Manager.  (Id. ¶ 1.)

9   PBSP inmates who wish to receive an SRD must first send Bliesner an "Inmate Request for

10  Interview" form, stating that they would like to participate in the SRD Program.  (Id. ¶ 3.)

11         On September 9, 2004, plaintiff sent Bliesner an "Inmate Request for Interview" form

12  in which he inquired as to the process for applying for an SRD.  (Pl.s Compl. ¶ 13; Bliesner

13  Decl., Ex. A.)  After receiving the form, Bliesner sent plaintiff a memorandum on September

14  11, 2004, outlining the procedures inmates must follow to obtain an SRD.  The memorandum

15  informs inmates they must identify their religious preferences, and requires they provide

16  Bliesner with information regarding the dietary habits of their religious group, as well as

17  some form of verification of their personal association or involvement with that religious

18  group.  (Bliesner Decl. ¶ 4 & Ex. B.)   Plaintiff sent Bliesner another "Inmate Request for

19  Interview Form" on November 14, 2004, stating he was still trying to obtain an SRD.  He did

20  not state his religious preference on the form.  (Bliesner Decl. ¶ 5 & Ex. C.)   Bliesner then

21  sent plaintiff another copy of the SRD memorandum.  On December 8, 2004, plaintiff filed

22  an inmate appeal, again requesting that he receive an SRD.  In that appeal, he identified his

23  religious preference as a member of the Church of the Creator.  (Tama Decl. ¶ 6 & Ex. B.)

24         When an inmate claims a religious preference and requests an SRD, Bliesner only

25  evaluates whether the inmate's claimed religion exists and whether the inmate is able to

26  demonstrate at a cursory level that he knows the tenets of his faith.  Bliesner's investigation

27  into an inmate's claimed religious preference is for identification purposes only; Bliesner

28  does not evaluate the merits of the claimed religion.  (Bliesner Decl. ¶ 7.)

United States District Court
For the Northern District of California

1      With respect to plaintiff's request, Bliesner researched the Church of the Creator on

2  the Internet, and determined that it did exist, and that its followers were predominantly

3  vegetarian.  Bliesner did not notice that a raw-food diet was recommended.  At that point,

4  Bliesner determined that plaintiff had met the basic requirements necessary to be provided

5  with an SRD.  (Id.)  Bliesner granted plaintiff's inmate appeal on January 4, 2005, issued a

6  "chrono" that plaintiff receive a special religious vegetarian diet, and placed plaintiff on the

7  SRD list.  (Tama Decl., Ex. B; Bliesner Decl. ¶ 7 & Ex. E.)  The SRD chrono informed

8  plaintiff that "Food Service will not honor [a] personal preference request that voids the

9  nutritional value of the Dietitian's approved Diet."  (Bliesner Del. ¶ 8.)

10      On January 10, 2005, plaintiff sent Bliesner another "Inmate Request for Interview"

11  form, in which he indicated that he was a "fruitarian," not a vegetarian.   In response,

12  Bliesner wrote plaintiff a memorandum on January 23, 2005, informing him that PBSP offers

13  only one SRD, and reminding him that the institution would not honor a dietary request that

14  voids the nutritional value of the prison dietitian's approved diet.  (Id. ¶ 10.)

15      Also on January 10, 2005, plaintiff appealed Bliesner's decision to the first formal

16  level of review.  (Tama Decl., Ex. B at 1.)  Defendant Gomez, the Supervising Correctional

17  Cook, conducted an interview of plaintiff regarding his appeal.  (Id. at 5.)  Plaintiff's appeal

18  was denied because his request to be provided with uncooked foods would have voided the

19  nutritional value of the California Department of Corrections and Rehabilitation's dietitian's

20  approved diet.  (Id.)  Plaintiff appealed the decision to the second level of review, and stated

21  that because his dietary needs were being denied, he was requesting an emergency transfer to

22  another institution equipped to accommodate his needs.  (Id. at 3.)

23      Defendant Somera, a Correctional Counselor, reviewed plaintiff's appeal at the second

24  level of review, and researched the Church of the Creator.  His research revealed that the

25  Church of the Creator is an Oregon-based church founded in 1969, and that the Church of the

26  Creator is the public ministry expression of Te-Ta-Ma Truth Foundation.  He further

27  discovered that the Oregon-based Church of the Creator does not make any reference to a

28  special diet requiring raw foods or salubrious living.  Somera's findings regarding the Church

**United States District Court**
For the Northern District of California

of the Creator were limited to the Oregon-based Church of the Creator, and not to plaintiff's alleged religion of the same name based out of Florida.  (Tama Decl., Ex. B at 6.)

Warden Kirkland partially granted plaintiff's appeal at the second level of review: plaintiff's request to have his dietary needs met was granted because the food prepared at PBSP was reviewed and approved by a dietitian; plaintiff's request for an emergency transfer was denied.  (Tama Decl., Ex. B at 6.)

## DISCUSSION

A.    Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

United States District Court
For the Northern District of California

1     In considering a motion for summary judgment, the court must view the evidence in

2  the light most favorable to the nonmoving party; if, as to any given fact, evidence produced

3  by the moving party conflicts with evidence produced by the nonmoving party, the court

4  must assume the truth of the evidence set forth by the nonmoving party with respect to that

5  fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on

6  a summary judgment motion is not to make credibility determinations or weigh conflicting

7  evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec.

8  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

9     A district court may not grant a motion for summary judgment solely because the

10  opposing party has failed to file an opposition.  Cristobal v. Siegel, 26 F.3d 1488, 1494-95 &

11  n.4 (9th Cir. 1994).  The court may, however, grant an unopposed motion for summary

12  judgment if the movant's papers are themselves sufficient to support the motion and do not

13  on their face reveal a genuine issue of material fact.  See United States v. Real Property at

14  Incline Village, 47 F.3d 1511, 1519-20 (9th Cir. 1995) (holding local rule cannot mandate

15  automatic entry of judgment for moving party without consideration of whether motion and

16  supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. Degen v.

17  United States, 517 U.S. 820 (1996).

18  B.   Analysis

19     The First Amendment guarantees the right to the free exercise of religion.  Cruz v.

20  Beto, 405 U.S. 319, 323 (1972).  "The free exercise right, however, is necessarily limited by

21  the fact of incarceration, and may be curtailed in order to achieve legitimate correctional

22  goals or to maintain prison security."  O'Lone v. Shabazz, 482 U.S. 342, 348 (1987).  In order

23  to establish a free exercise violation, a prisoner must show the defendant burdened the

24  practice of his religion, by preventing him from engaging in conduct mandated by his faith,

25  without any justification reasonably related to legitimate penological interests.  Freeman v.

26  Arpaio, 125 F.3d 732, 736 (9th Cir.1997) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

27     Here, plaintiff alleges defendants have violated his First Amendment right to free

28  exercise of his religion by denying him his preferred religious diet.  The Ninth Circuit has

held that inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (internal quotation and citation omitted.)  Consequently, the refusal by prison officials to provide a healthy diet conforming to sincere religious beliefs may violate the First Amendment.  See id.

At the outset, defendants argue that plaintiff cannot show a constitutional violation because the Church of the Creator is not a religion entitled to First Amendment protection. To assess whether a belief or movement invokes constitutionally cognizable religious interests, the Ninth Circuit has adopted the following three-part test:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.  Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.  Third, a religion often can be recognized by the presence of certain formal and external signs.

Alvarado v. City of San Jose, 94 F.3d 1223, 1229-30 (9th Cir. 1996) (quoting Africa v. Pennsylvania, 662 F.2d 1025, 1032 (3d Cir. 1981), cert. denied, 456 U.S. 908 (1982)).

Defendants argue the Church of the Creator fails to qualify as a constitutionally-cognizable religion under the three-part test.  First, defendants argue, the Church of the Creator's primary objective, rather than focusing on "ultimate questions" and "deep and imponderable matters," is white supremacy, which is to be accomplished through violence in the form of a "Racial Holy War."  Second, defendants argue, the doctrine of the Church of the Creator consists of an "isolated teaching" of white supremacy, and not a comprehensive belief system.  Finally, defendants argue, any "formal and external" signs displayed by the Church of the Creator (such as its hierarchical structure and five celebrated holidays) are of a secular, rather than religious, nature.

In Alvarado, the Ninth Circuit recognized that defining religion for First Amendment purposes is a task that is "notoriously difficult, if not impossible."  Id. at 1227.  In the instant case, the record does not provide the Court with much guidance in applying Alvarado's three-part test.  In Alvarado, the Ninth Circuit applied the three-part test to determine whether a publicly-funded sculpture was "religious," or secular in nature.  In so doing, the

7

United States District Court
For the Northern District of California

Ninth Circuit relied upon a fully-developed factual record regarding the possible religious significance of the sculpture.  Id. at 1229-31.  By contrast, in the instant case, the record is sparse regarding the overarching doctrinal parameters of the Church of the Creator.  While it is clear that the objective of white supremacy is central to the Church of the Creator's doctrine, defendants' assertion that the doctrine does not satisfy the elements of the three-part test is not as evident.  Viewed in the light most favorable to plaintiff, the evidence relied upon by defendants does not establish, as matter of law, that the Church of the Creator is not entitled to the religious protections of the First Amendment.  Accordingly, the Court assumes, without deciding, that the Church of the Creator is a religion within the meaning of the First Amendment.

The Court next turns to the second step in the analysis, the question of whether eating a raw-food diet is "mandated" by plaintiff's faith.  See Freeman, 125 F.3d at 736.  The Ninth Circuit explained in Freeman: "In order to reach the level of a constitutional violation, the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." 125 F.3d at 737 (internal quotation and citation omitted).  The record is adequately developed regarding whether a raw-food diet is mandated by the Church of the Creator, and the Court finds no such mandate.  The allegations in plaintiff's complaint, along with plaintiff's answers to defendants' interrogatories, establish the following undisputed facts: Creativity recommends that its members follow a lifestyle known as "salubrious living," (Pl.'s Compl. ¶ 24); Creative Credo No. 5 defines "salubrious living" as "an effective, systematic program for the upgrading of the health and vigor of our precious White Race," (Tama Decl., Ex. D at 2:8-12.); Creative Credo No. 6 recommends its members eat a "frugitarian," or raw-food, diet, (id. at 2:15-18; Pl.'s Compl. ¶ 25); Creativity believes in, but does not require, that its members follow a raw-food diet, (Tama Decl., Ex. D at 3:28-4:5); the "16 Commandments of Creativity" do not discuss "salubrious living" or require that its members follow a raw-food diet, (id. at 4:13-17).  The Court finds defendants' moving papers are sufficient to support summary judgment and that the evidence submitted by

1   defendants does not, on its face, reveal a genuine issue of material fact as to whether a raw-

2   food diet is mandated for members of the Church of the Creator.  See Real Property at Incline

3   Village, 47 F.3d at 1520.[5]

4         In sum, plaintiff has failed to make a showing sufficient to establish the existence of

5   an element essential to his case, specifically, that defendants prevented him from engaging in

6   conduct mandated by his faith.[6]  Accordingly, summary judgment will be granted in favor of

7   defendants.  See Celotex, 477 U.S. at 322-23.

8                                    **CONCLUSION**

9         For the reasons stated, defendants' motion for summary judgment is hereby

10   GRANTED and judgment shall be entered in favor of all defendants.

11         This order terminates Docket No. 23.

12         The Clerk shall close the file.

13         IT IS SO ORDERED.

14   DATED: September 21, 2007

15                                    _____
                                      MAXINE M. CHESNEY
16                                    United States District Judge

17

18

19

20

21

_____

22         [5]Defendants do not argue that their decision to deny plaintiff a raw-food diet was
    rationally related to a legitimate penological purpose.  See Freeman, 125 F.3d at 736.
23   Because the Court finds a raw-food diet was not mandated by plaintiff's religion, the final
    analytical step is not required.  The Court notes, however, that the Ninth Circuit has
24   recognized that prisons have "a legitimate penological interest in running a simplified food
    service, rather than one which gives rise to many administrative difficulties," see Ward, 1
25   F.3d at 877, and has found: "[t]he policy of not providing special diets is related to simplified
    food service," id.
26

27         [6]In light of this finding, the Court does not reach defendants' arguments that they are
    entitled to qualified immunity, that defendant Kirkland cannot be held liable as a supervisor,
28   and that plaintiff's suit is barred under 42 U.S.C. § 1983 because he did not suffer any
    physical injury.